NEWELL G. HARDISON *vs.* EARL K. JORDAN.

NEWELL G. HARDISON *vs.* EARL K. JORDAN.

EARL K. JORDAN *vs.* NEWELL G. HARDISON.

Hancock.  Opinion, December 12, 1946.

*Blaisdell & Blaisdell*, for Newell G. Hardison.

*Clarke & Silsby*, for Earl K. Jordan.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MURCHIE, TOMP-KINS, FELLOWS, JJ.

STURGIS, C. J.   These cases, growing out of a dispute between the parties as to the dividing line between their properties in Waltham, Maine, and the ownership of a strip of land along that boundary, come forward on motions for new trials and are argued together as they were tried below. They are reviewed in the reverse order of their numerical positions on the docket.

Controversy as to this disputed strip of land has recently been before this Court in an action of trover brought by *Newell G. Hardison* v. *Earl K. Jordan* for picking blueberries on the land, in which on review a new trial was granted. *Hardison* v.

*Jordan,* 141 Me., 429, 44 Atl., 2d, 892. That case, however, did not finally determine the issues raised here and is not a bar to these actions. *Susi* v. *Davis,* 134 Me., 308; *Kimball* v. *Hilton,* 92 Me., 214; *Young* v. *Pritchard,* 75 Me., 513.

## EARL K. JORDAN *v.* NEWELL G. HARDISON

This is a real action and was entered at the September Term of the Superior Court for Hancock County and continued to the following April Term when a plea of nul disseizin and a disclaimer having been filed by the defendant the case was submitted to the jury and a general verdict for the demandant returned. It appearing that the disclaimer filed at the trial term was without enlargement of time for filing, it was ineffective and must be disregarded. R. S., Chap. 158, Sec. 6; Rule 5, Supreme Judicial and Superior Courts; *Susi* v. *Davis,* supra and cases cited. Upon the pleadings, the demandant can only recover the premises described in his writ and to which he proves legal title at the date of the commencement of his action. He must recover, if at all, upon the strength of his own title. If he shows no title, he cannot prevail, even though the defendant has none. *Elwell* v. *Borland and Sexton,* 131 Me., 189; *Spencer* v. *Bouchard,* 123 Me., 15; *Wyman* v. *Porter,* 108 Me., 110; *Brown* v. *Webber,* 103 Me., 60. The case comes forward on defendant's motion for a new trial.

The demandant and the defendant trace their titles to their adjoining lands back to Andrew M. Fox who owned a part of Lot 15 in Township No. 20 and in the Town of Waltham and on February 16, 1871 conveyed the westerly part of his tract to Daniel Wooster and the remainder and easterly part to Henry Fox.

Title to the Daniel Wooster lot, after several mesne conveyances, was acquired on November 7, 1904 by Hollis D. Jordan and held by him, except for sales on execution which were redeemed, until he died in 1940 and was then, on September 23, 1941, sold by Earle H. Kelley his administrator to

Sadie M. and Theron Haslam who on November 12, 1941 conveyed it to Earl K. Jordan the demandant by deed containing the following description:

"Beginning on the county road leading to Mariaville and thence East on line of land formerly of Isaiah Kingman thirty-eight rods; thence North seventy-six rods to house lot bargained to David Fox; thence West four rods; thence North ten rods to the Aurora road; thence East four rods; thence North seventy-four rods; thence West forty-five rods; more or less to the county road aforesaid; thence South one hundred and sixty rods to place of beginning and containing forty acres more or less."

This description was used in every deed by which this property was conveyed. And it is the description used in the demandant's writ.

The Henry Fox lot is now owned by the defendant Newell G. Hardison under deed of Everett Mace of July 3, 1926, describing the property conveyed as,

"Beginning at the County road leading from Waltham to Aurora, thence northerly seventy four (74) rods to lot No. 34; thence easterly seventy six (76) rods to lot No. 14, deeded to Twynham and Mercer; thence southerly one hundred and sixty (160) rods to land of Gilman Jordan estate, or lot No. 10; thence westerly seventy six (76) rods to land formerly of Daniel Wooster, now of Hollis D. Jordan; thence northerly seventy six (76) rods; thence westerly four (4) rods; thence northerly ten (10) rods; thence easterly four (4) rods to the place of beginning, and containing seventy six (76) acres, more or less. Excepting and reserving however, a strip of land on the south side of said lot of about ten acres, deeded to Arville S. Jordan by Isaac Jenkins."

And by deed of Oscar T. Jordan administrator of February 11, 1932 containing the following description:

"Beginning at the south west corner of the William Mercer lot, formerly, and thence north on said Mercer lot west line, twenty three (23) rods; thence westerly so as to hit a stone wall, and thence by said wall to the east line of lot formerly owned by Daniel Wooster; thence southerly in said Wooster lot east line, twenty three (23) rods to land formerly of Isaiah Kingman; thence easterly on the north line of said Kingman lot to the place of beginning, and containing ten acres, more or less."

At the trial, the defendant relying upon a plan made by his surveyor which was based on the calls for distances in one of his deeds, contended that his West boundary was about thirty-three rods from the side of the county road leading to Mariaville and admitted that he had taken possession of the land lying East of that line. The demandant claimed, however, that the East boundary described in his deed was the dividing line between the adjoiners and defined the land he was entitled to recover. The defendant's contention cannot be sustained for under his deeds and those of his predecessors in title the property conveyed is and always has been bounded on the West by the demandant's land which is a monument to which distances must yield. *McCausland* v. *York*, 133 Me., 115, 123; *Perkins* v. *Jacobs*, 124 Me., 347. The demandant's claim that his land extends to the East line described in his deed is well founded but where that line is located determines the extent of his right of recovery under his writ and as he proves no other source of title depends upon the construction to be placed upon his conveyance.

An examination of the demandant's deed which, as already stated, comports with all prior grants, discloses that there is a presumption that the East line of the land conveyed begins at the end of the southerly bound and thirty-eight rods East of the center of the county road leading to Mariaville and thence runs North with a jog one hundred and sixty rods more or less.

For it is settled in this jurisdiction that the point of beginning of the southerly bound, which fixes the location of the beginning of the East line being described as on the county road leading to Mariaville, unless a different intention is indicated, is to be taken as in the center of the way. *Cyr* v. *Dufour,* 68 Me., 492; *Hardison* v. *Jordan,* supra. This presumption, however, as stated in the rule, is not conclusive, and although it is not clearly rebutted by the terms of the grant, in the light of the evidence in this record it is uncertain whether it is intended that the East line of the demandant's land should run North from a point thirty-eight rods from the center or that distance from the side of the county road leading to Mariaville and the acts of the parties and their predecessors in title must be considered in determining the true construction of the instrument. *Borneman* v. *Milliken,* 123 Me., 488; *Bradford* v. *Cressey,* 45 Me., 9.

At the trial the demandant showed that for many years there had been a fence, stone wall and trees spotted on a line running North from a point practically thirty-eight, or by measurement 37.91 rods, from the East side of the county road leading to Mariaville and produced many witnesses who testified that from as early as 1904, when Hollis D. Jordan became the owner of the demandant's land, he and his successors in title had recognized and occupied to the line of these monuments as their East boundary and the adjoiners had done the same on the other side, until in 1943 the defendant refused to recognize this line and advanced the claim that his boundary was only thirty-three rods East of the side of the county road. This evidence was for the jury to weigh with other material facts and find where under his deed the demandant's East line was located, but it cannot be ascertained from the verdict that this was done.

The general verdict returned grants the demandant a recovery of the land described in his writ and to this he was undoubtedly entitled. But it does not determine whether his East line begins thirty-eight rods from the side or from the center of the county road leading to Mariaville, who owns the strip

between these locations, and what land he actually is entitled to recover. This was the real issue tried out in this case and with their general verdict the jury should have been directed to report their finding thereon in a special verdict. *Nicholson* v. *Railroad Co.,* 100 Me., 342, 348. As is there said:

"when it is perfectly apparent that the verdict, upon the issue presented, does not determine the rights of the parties, it seems clear that the case, if possible, should be put in such a position, that the parties, by means of the action already pending which has been brought for that express purpose, may be able to have all their rights decided, instead of being left in uncertainty, their litigation and expense of no avail, with the necessity still resting upon them of bringing another suit to accomplish the very end the one in being was instituted to secure."

We think the verdict should be set aside and a new trial granted where all the issues involved can be finally determined.

*Motion sustained.*
*New trial granted.*

NEWELL G. HARDISON *v.* EARL K. JORDAN.

NEWELL G. HARDISON *v.* SAME.

These are actions of trespass and trover for wrongful entry upon and removal of hardwood from land along the dividing line between the adjoining properties of the parties and the verdicts were for the defendant. They were tried with the real action already considered and by the same jury, and except as to entry and conversion, upon the same evidence, but all remain separate so far as concerns verdicts, judgments, and all aspects save only the one of joint trial. *Barton, Exec.* v. *McKay,*

135 Me., 197, 199. These cases come forward on plaintiff's motions for new trials.

We do not think the verdicts in the trespass and trover suits are clearly inconsistent with that returned in the real action. They do not bar its further maintenance. They are not clearly wrong and the motions for new trials cannot be granted. In each of these cases the entry is

*Motion for new trial denied.*