### Roger M. TORREY

v.

### The FULL GOSPEL CHURCH OF SEARSPORT.

Supreme Judicial Court of Maine.

Nov. 17, 1978.

---

Cohen & Cohen by Barry A. Cohen (orally), Stuart M. Cohen, Bangor, for plaintiff.

Jerome B. Goldsmith, Bangor (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

On appeal from the District Court, the Superior Court set aside a judgment for $10,141 in favor of plaintiff Roger M. Tor-

rey against defendant The Full Gospel Church of Searsport in an action brought on an account annexed. The Superior Court justice found the evidence presented in the District Court insufficient as a matter of law to sustain a judgment for the plaintiff. On appeal to the Law Court, Torrey argues that the Superior Court was without jurisdiction to hear the appeal from the District Court, and further that the Superior Court erred in reversing the District Court judgment on the ground of insufficient evidence. Although we find the Superior Court had jurisdiction, we agree with Torrey's latter contention and, accordingly, we sustain his appeal.

Torrey and the Church entered into a contract whereby Torrey agreed to remodel the Church building for $40,000. The District Court found, however, that this contract was rescinded and replaced with an oral contract calling for payment on a cost-plus-ten-percent basis. Judgment for Torrey was entered on February 1, 1977. On February 4 the Church filed a timely motion requesting additional findings of fact.[1]

On October 26, 1977, after receiving and reviewing the full transcript of the hearings before him, the District Court judge sent the Church's lawyer a letter informing him of the judge's view that the judgment of February 1, 1977, included "findings and conclusions which satisfy the requirements of District Court Civil Rule 52."[2] An entry was made on the District Court docket, on October 26, 1977, reading simply: "Letter to Atty. [for the Church] sent." On November 9, 1977, fourteen days later, defendant filed its notice of appeal to the Superior Court. The Superior Court rejected plaintiff's contention that defendant's notice of appeal was not timely filed and proceeded, in a detailed opinion analyzing the evidence before the District Court, to set aside plain-

tiff's judgment on the ground the record contained insufficient evidence that the parties had rescinded their original $40,000 contract. The Superior Court remanded the case to the District Court for determination on the basis of that "original contract plus proper extra charges." Plaintiff Torrey then appealed to this Court.

## Timeliness of Defendant's Appeal to the Superior Court

■ The timeliness of the Church's appeal to the Superior Court goes to the Superior Court's jurisdiction. If the Church failed to take its appeal from the District Court's judgment of February 1, 1977 within the time prescribed by Rule 73(a), D.C. Civ.R., the Superior Court lacked jurisdiction to hear the appeal. *See Maine Mack, Inc. v. Skeels*, Me., 330 A.2d 420, 422 (1975), and cases there cited.

Rule 73(a) provides that a timely motion for findings, under either Rule 52(a) or Rule 52(b), tolls the running of the ten-day period for taking an appeal to the Superior Court. Thus, the Church's motion filed three days after the February 1 judgment [thus within the five days prescribed by Rule 52(a) and *a fortiori* within the ten days prescribed by Rule 52(b)] tolled the period within which the Church could take an appeal to the Superior Court from that judgment. The same Rule 73(a) under which the appeal period was tolled also specifies when the tolling will terminate; it states that "the full time for appeal [10 days] commences to run and is computed from the entry of any of the following *orders* made upon a timely motion under such rules: making findings of facts or conclusions of law as requested under Rule 52(a); or granting or denying a motion under Rule 52(b) . . . ." (Emphasis added)

---

1. In view of the fact that the District Court's "judgment" of February 1, 1977, clearly contained *some* findings of fact and conclusions of law, the Church's "request for Findings of Fact and Conclusions of Law" may appropriately be treated as a motion under Rule 52(b), D.C. Civ.R., for amended findings, rather than an original request for findings under Rule 52(a), D.C.Civ.R. In any event, the outcome of this

case is unaffected by the characterization of the Church's post-judgment request for findings.

2. Rule 52(a), D.C.Civ.R., provides in part:
"If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear thereon."

In the case at bar the "order" which would trigger commencement of the running of a new appeal period was never entered by the District Court. Neither the District Court judge's letter nor the entry of the docket reading "Letter to Atty. [for the Church] sent," constituted an "order" within the meaning of that rule. We held in *State v. Baker*, Me., 390 A.2d 1086, 1088 (1978), that the mere notation of "motion granted" by the judge on the motion paper and the corresponding docket entry did not constitute a pretrial order from which the State could appeal under 15 M.R.S.A. § 2115–A. A similar test applies in determining what is an "order" for purposes of Rule 73(a), D.C.Civ.R. As *State v. Baker, supra* at 1089, stated: "The efficiency of the appellate process is enhanced if the various time periods provided by statutes and rules begin unambiguously on the dates when judgments and orders are entered as such."

Since no *order* "making findings of facts or conclusions of law as requested under Rule 52(a)" or "granting or denying a motion under Rule 52(b)" was ever issued on the Church's timely motion, the tolling of the appeal period was never terminated. The running of that appeal period was still tolled on November 9, 1977, when the Church filed its notice of appeal. It was not too late to file the appeal. Thus, there was no infirmity in the Superior Court's jurisdiction over the Church's appeal.

Having concluded that the Church's notice of appeal to the Superior Court was *not filed too late*, the question naturally arises whether the Church's appeal conversely suffers from any infirmity by reason of having been *filed too early*. We conclude that it does not. On November 9 when the Church filed its notice of appeal, the District Court judge, even though he had not entered any "order," had declared in writing his rejection of the Church's request. On that day, by filing its notice of appeal, the Church clearly made an election to go forward with an appeal to the Superior Court and abandoned any attempt to press further its request for additional findings from the District Court. There was at that point nothing standing in the way of the Church's appeal proceeding in the ordinary course.

Having rejected plaintiff Torrey's attack upon the propriety of the Superior Court's reviewing the District Court judgment on the Church's appeal, we now turn to the merits of Torrey's appeal from the Superior Court's reversal of that judgment.

### Sufficiency of the Evidence

"Whether or not such an executory contract has been rescinded by mutual consent is a question of fact which need not be proved by express terms, but may be inferred from the attendant circumstances and the conduct of the parties." *Lewis v. Marsters*, 139 Me. 17, 22, 26 A.2d 649, 651 (1942). We have also recognized that while a rescission and substituted contract may be proved inferentially, "nothing short of cogent proof will establish the fact of a change in that which originally was reciprocally done." *Spaulding v. American Realty Co.*, 121 Me. 493, 494, 118 A. 322, 322 (1922). *See also Lemieux & Co. v. Letourneau*, 130 Me. 201, 208, 154 A. 454, 457 (1931).

The District Court judge found as a fact that "any building contract the parties may originally have had was rescinded early in the course of construction." In reviewing that finding on appeal the Superior Court justice was bound to apply the "clearly erroneous" test prescribed by Rule 73(a), D.C. Civ.R. We have repeatedly stated that findings of fact made by the trial court who heard the testimony of the witnesses are entitled to considerable respect. *LaPointe Brothers, Inc. v. Farrell*, Me., 363 A.2d 225, 228 (1976); *Dehahn v. Innes*, Me., 356 A.2d 711, 716–17 (1976); *Jolicoeur v. Kennebec Water District*, Me., 356 A.2d 193, 195 (1976); *Atlantic Acoustical & Insulation Co. v. Moreira*, Me., 348 A.2d 263, 266 (1976).

In the case at bar, much turned upon the credibility of the witnesses testifying in person before the District Court judge. In that testimony the principal witness for the Church conceded that he was

aware that a billing change had been made by Torrey and that the Church was being charged on a cost-plus-ten-percent basis instead of on a contract installment basis; yet he insisted that the Church never agreed to that change. He also acknowledged that the Church willingly made some payments to Torrey in excess of the original $40,000 contract price, and he did not contradict the testimony of plaintiff's wife that he told her over the phone that the Church fully intended to pay Torrey the entire sum which Torrey said the Church owed him, including sums exceeding $40,000. Plaintiff Torrey flatly testified that the Church agreed to abandon the original contract in favor of the cost-plus-ten-percent agreement. Defendant's witnesses denied this. Faced with a direct conflict in the testimony of witnesses appearing before him, the District Court judge chose to believe plaintiff's witnesses. We cannot say that his factual conclusion was clearly erroneous.

In reviewing factfindings in civil cases tried in the District Court, both the Superior Court (which for that purpose is merely an intermediate appellate court) and the Law Court are placed in the position of scrutinizing a cold record. Long ago we observed that much passes "before the eye of a trial judge" that is "not capable of being preserved in the record." *Young v. Witham*, 75 Me. 536, 537 (1884). "The familiar rule that findings of fact will not be set aside if they are supported by competent evidence is based upon appreciation of the truth that the fact finder who hears and sees the witnesses, who observes their hesitations, inflections and emphases, is in a more favorable position to judge their credibility than the appellate court which only reads the printed testimony." *Matthews v. R. T. Allen & Sons, Inc.*, Me., 266 A.2d 240, 244 (1970). *See also Cunningham v. Cunningham*, Me., 314 A.2d 834, 838 (1974).

The outcome of the case at bar hinged upon the credibility of the witnesses. The District Court judge heard plaintiff's testimony, chose to believe him and his witnesses, and found that a rescission of the original contract had occurred. The Superior Court erred in concluding that the District Court's finding was clearly erroneous.

■ The Church argues that even if the evidence was sufficient to prove a rescission of the original contract, Torrey failed to prove the amount of his damages with reasonable certainty, since he did not establish that he had performed the labor and furnished the materials for which the Church was charged. The issue thus raised by the Church was not reached by the Superior Court, and accordingly we must examine the District Court record to determine whether the District Court's finding of damages in the amount of $10,141.00 was clearly erroneous as now asserted by the Church.

In support of his claim for damages, Torrey offered in evidence copies of 19 periodic bills he prepared and submitted to the Church between October 22, 1971 and June 28, 1972. At the time of their admission, the Church made only a generalized objection. In subsequent testimony, Torrey's bookkeeper laid an adequate foundation for admission of the bill copies as business records admissible under the exception to the hearsay rule provided by Rule 803(6), M.R. Evid. That rule provides that notwithstanding the availability of the declarant who prepared them, business records in the form of memoranda, reports, or data compilations made "at or near the time" of the events reflected in the records and kept "in the course of a regular[ly] conducted business" are admissible.[3] The bookkeeper tes-

---

**3.** Rule 803(6), M.R.Evid., declares that the "following are not excluded by the hearsay rule, even though the declarant is available as a witness":

"(6) *Records of regularly conducted business.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from informa-

tion transmitted by, a person with knowledge, if kept in the course of a regular[ly] conducted business, and if it was the regular practice of that business to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of

tified that as part of his regular job he personally prepared the bills from information available to him of the amounts of labor and materials furnished the Church. The bills were routinely prepared as the labor and materials were furnished, thus satisfying the requirement that they be prepared "near the time" of the events reflected in the bills. We are satisfied that it was the regular practice of Torrey's business to prepare and keep copies of bills sent to customers on a periodic basis. "The reliability" of business records "is thought to rest upon the systematic businesslike way in which they are kept." Field & Murray, *Maine Evidence* § 803.6, p. 216 (1976). *See also* 4 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 803(6)[01] (1977). There is nothing in this record to suggest that "the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

■ On the facts of this case, the bills were properly admitted for the truth of the matter asserted; namely, the amounts of labor and materials which Torrey furnished the Church. The latter offered no evidence to show that those amounts were false or inflated. Standing alone, without contradiction, those business records provided adequate evidentiary support for the District Court's finding of Torrey's damages. An appellate court on this record cannot say that the District Court's finding was clearly erroneous.

The entry must be:

Appeal sustained.

*Superior Court judgment reversed.*

Remanded to the Superior Court for entry of judgment denying defendant's appeal from the District Court and affirming judgment of the District Court.

POMEROY, J., did not sit.

---

trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." *Cf.* Rule 803(6), Fed.R.Evid.